[No. 21335.    Department One.    December 13, 1928.]

MIKE NICKTOVICH, *Respondent,* v. OLYMPIC MOTOR TRANSIT COMPANY *et al., Appellants.*[1]

[1]Reported in 272 Pac. 736.

*Bronson, Jones & Bronson,* for appellants.

*G. F. Vanderveer,* for respondent.

BEALS, J.—This action was instituted by plaintiff for the purpose of recovering damages for personal injuries suffered by plaintiff while riding as a passenger for hire in a motor stage owned and operated by defendant Olympic Motor Transit Company, a corporation (hereinafter referred to as the company), which stage was, at the time of the accident resulting in plaintiff's injuries, running on the highway from Hoodsport to Bremerton.

Mutual Union Insurance Company, a corporation (hereinafter referred to as the insurance company), was joined as party defendant because it had executed in favor of the company a policy of liability insurance in the sum of five thousand dollars, as required by Rem. Comp. Stat., § 6391, which policy had been filed with the department of public works in accordance with law.

In his complaint plaintiff alleges that, on the morning of December 16, 1926, he boarded at Sund, near Hoodsport, as a passenger for hire, one of the company's stages on which he desired to be transported to Bremerton; that at about ten thirty o'clock in the morning, at a point about five miles northeast of Union City, the stage in which he was riding collided with an

oil truck which was proceeding in the opposite direction, and that plaintiff, as a result of the collision, was thrown through a glass partition behind which he was sitting, the impact and the broken glass inflicting upon plaintiff the injuries for which he seeks compensation.

Plaintiff alleges in his complaint that his nose was severely hurt and that he suffered other specified injuries; that he had been employed as a logger at a daily wage of four dollars, and that as a result of the accident he was for four months totally incapacitated from performing any gainful labor. As a result of plaintiff's injuries, he demands judgment against defendants in the sum of five thousand dollars.

By way of alleging negligence on the part of the company's stage driver, plaintiff sets forth in his complaint that the driver attempted to pass, on a blind curve, at a negligent and dangerous rate of speed of thirty miles per hour and without sounding his horn, a road grader or scraper, and that the collision with the oil truck proximately resulted from the negligence of defendant's agent.

Plaintiff in his complaint also alleges that the defendant company was, on and prior to December 16, 1926, engaged in business as a common carrier for hire, operating automobile stages, and that on and prior to that date the defendant insurance company had executed and delivered, and had then on file with the department of public works of the state of Washington, a policy of liability insurance in the sum of five thousand dollars, conditioned as required by the provisions of the Laws of 1921, p. 338 [Rem. Comp. Stat., § 6387].

The defendants answered jointly, denying all allegations of negligence on the part of defendant company, and denying that the defendant insurance company had, prior to December 16, 1926, or at any time prior

to December 28, 1926, executed or delivered any policy of insurance to the defendant company.

Defendants in their answer pleaded affirmatively their version of the circumstances which resulted in the accident mentioned in plaintiff's complaint, and alleged that the driver of the defendant company's stage was not guilty of any negligence which resulted in any injuries to plaintiff, but that such injuries, if any, were solely and proximately occasioned by the negligence and carelessness of the agent of the Peninsular Oil Company who was driving that company's oil truck at the time the same collided with the defendant company's stage.

The affirmative allegations of defendant's answer were denied by plaintiff in his reply.

The trial of the action before a jury resulted in a verdict in plaintiff's favor in the sum of eighteen hundred dollars, and from a judgment entered upon this verdict defendants appeal.

Appellants assign certain errors which may be divided into groups as follows: First, upon the admission of testimony offered by respondent and received over objection by appellants; second, upon the admission, over appellants' objection, of testimony concerning the policy of liability insurance executed by appellant insurance company; third, upon the ruling of the court denying appellants' motion for a nonsuit and dismissal of the case at the close of respondent's testimony; fourth, upon the rulings of the court in rejecting, upon respondent's objection, certain testimony offered by appellants; fifth, upon the rulings of the court denying appellants' motion for a directed verdict, in denying appellants' motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, and in entering judgment in favor of respondent and against appellants.

■ The court, over appellants' objection, permitted respondent and other witnesses to testify as to their opinion concerning the speed of the stage at and just prior to the time of the accident.

.Appellants earnestly contend that this testimony was improperly received, for the reason that the witnesses were not qualified to testify concerning the speed of the stage, either because they were not competent to judge speed or because they could not, from the positions they were occupying in the stage, fairly judge as to the speed at which it was traveling. In our opinion, the objections urged by appellants to this testimony are rather objections to its weight than to its competency. Under all the circumstances the trial court did not err in allowing the witnesses to testify as to their opinions as to the speed of the stage.

■ Appellants also contend that the court erred in allowing respondent to answer his counsel's question, "How much time have you lost from your work?" after respondent had testified definitely concerning certain periods after the accident when he had worked and when he had not. Appellants cross-examined respondent concerning this matter, and we find no reversible error in the ruling of the court on appellants' objection to the question asked.

■ In regard to the liability insurance policy executed by the appellant insurance company in accordance with the law requiring the execution of such security, respondent in his complaint alleged that, prior to December 16, 1926, the date of the accident, the appellant insurance company had executed and delivered to the appellant company, and filed in the proper state office, its liability policy in the sum of five thousand dollars, conditioned as required by law. In their answer appellants denied that the appellant insurance company had executed such a policy prior to December

16, 1926, or that it had done so at any time prior to December 28, 1926.

Under the law, a plaintiff has a right to sue the surety or insurance company who has executed the bond or insurance policy, which the law requires to be executed on behalf of companies engaged in business as common carriers, as is appellant company. In the instant case the facts seem to be as follows: On December 28, 1926, appellant insurance company issued a policy in favor of appellant company, as required by law, and for some reason, in order to comply with the law requiring appellant company to be at all times insured, attached thereto a letter purporting to date the policy back to October 31, 1926.

At the same time, an agreement was entered into between the two appellants whereby appellant company undertook to indemnify appellant insurance company for any losses appellant insurance company might be compelled to pay on claims which arose prior to December 28, 1926, the actual date of the policy. In other words, appellant insurance company is absolutely liable to claimants suffering injuries covered by the policy after October 31, 1926, but as between the two appellants, appellant insurance company is not liable upon claims arising prior to December 28, 1926. Appellants sought to introduce evidence which would explain this situation to the jury, which evidence was rejected by the trial court upon objection by respondent.

Appellants rely upon the case of *Colvin v. Auto Interurban Co.,* 132 Wash. 591, 232 Pac. 365, wherein it was stated that testimony to the effect that the amount of the liability on the part of the appellant insurance company was limited to five thousand dollars appeared to be competent.

The law requires the execution and filing of a policy

similar to that which was filed in the case now under consideration, and permits the writer of such policy to be joined as defendant in an action similar to this. In the case at bar, appellants denied the existence of a policy written by appellant insurance company covering the date on which respondent was hurt. This justified respondent in offering proof of the allegations of his complaint.

Appellants contend that all this attracted unduly the attention of the jury to the fact that appellant company was insured when, in fact, as between the appellants, appellant company was not protected, but, on the other hand, was, in fact, at its own expense protecting appellant insurance company.

If, in this action, it be held permissible for the appellant company to prove that it has indemnified appellant insurance company against loss under the policy on file in the office of the department of public works, then it would follow that such testimony would be admissible in any case in which a defendant carrier should offer testimony to the effect that it had indemnified its insurer against loss upon a similar policy. The rather unusual circumstance that the appellant insurance company had at this instance, as to all persons injured, protected them by dating its policy back to comply with some departmental rule, nowise differentiates this case in principle from any case in which the carrier has undertaken to indemnify its insurer against loss.

It would seem clear that such testimony as appellants offered must be held inadmissible. The policy of liability insurance is required by statute, and to permit the insured to show that it had indemnified its insurer against loss under the policy, would be to interject into each case in which such testimony was offered a foreign element certainly not in harmony with the

spirit of the law. We conclude that no error was committed by the trial court in rejecting the testimony offered.

We next consider appellants' assignments of error based upon rulings of the trial court rejecting certain evidence offered by appellants. In the first place, appellants complain of the court's ruling refusing to permit appellants' witness Patterson, who was the driver of the stage, to testify as to whether or not in his opinion he was driving the stage in a safe and cautious manner at the time of the accident.

In support of this assignment of error, appellants cite the case of *Halverson v. Seattle Electric Co.*, 35 Wash. 600, 77 Pac. 1058. This court in the case cited held that the trial court committed no error in overruling objections to questions propounded to a witness, who was a motorman, as to his opinion as to the rate of speed at which a street car could, with safety to its passengers, be driven around a certain curve in the track; the witness having had long experience as an operator of street cars over the identical track in which the curve was situated. This question is entirely different from that which we are now considering. A curve in a track is a fixture; the witness had operated a car around that particular curve hundreds of times, and, in view of the circumstances of that case, the admission of his testimony as to what would constitute a safe rate of speed at which to operate a car around that curve, was properly held not to be reversible error.

In the case at bar, the witness Patterson testified fully as to all the circumstances surrounding the accident which resulted in injury to respondent, which presented a special situation different from anything which had happened before in his experience. Mr. Patterson's opinion as to whether or not at the time

of the accident he was driving his stage in a safe and cautious manner was not a proper element for the consideration of the jury. The trial court committed no error in sustaining the objection to this testimony.

■ In the next place, appellants complain of the ruling of the court in striking the testimony of appellants' witness Price, who was driving a stage immediately ahead of that driven by Patterson. This witness testified that he had passed the oil truck which collided with the stage upon which respondent was riding, and that the oil truck was going at a rate of not less than forty miles per hour. Appellants' counsel then asked the witness if the oil truck had collided with the stage which he was driving, to which he answered, "Yes, sir"; which answer was, on motion of respondent's counsel, by the court stricken from the record.

There was no error in this ruling. The witness had testified as to the rate of speed at which the oil truck was proceeding. Whether or not the motor vehicle driven by this witness collided with the oil truck, was immaterial, and presented a collateral issue which could only have confused the jury. If the answer had been allowed to stand, respondent could properly have offered testimony to the effect that this collision was due to the carelessness of the witness Price, and not to the carelessness of the driver of the oil truck. This testimony was properly stricken.

■ The errors assigned by appellants upon the denial of their motions for a nonsuit, for a directed verdict, for judgment notwithstanding the verdict and for a new trial will be considered together.

The stage upon which respondent was riding had passed Union City and was proceeding on the highway along the margin of Hood Canal. There was snow upon the road and the surface was wet and slippery.

As the stage was rounding, or had just rounded, a curve to the right, there appeared a road grading machine, or scraper, standing in the road in such a position that it blocked the right hand two-thirds thereof. The driver of the stage steered his machine to the left to pass the grading machine, and, as he was passing the same, an oil truck, carrying a six hundred gallon tank, suddenly appeared around a curve approximately six or seven hundred feet ahead, proceeding rapidly in the direction opposite to that in which the stage was proceeding. The oil truck continued on its way at a high rate of speed, and the driver of the stage endeavored to go ahead and reach a position of safety on the right hand side of the road ahead of the road scraper.

Discovering that it was impossible to swing his stage in ahead of the scraper, the driver applied his brakes, slowed down and was going, as he testifies, at about five miles per hour when the oil truck, which had skidded on the slippery road as the result of the application of its brakes by its driver, collided with the stage, which was stopped practically instantly by the impact of the collision. The sudden jolt threw respondent into the glass partition behind which he was sitting.

Respondent contends that the driver of the stage was negligent, in attempting to pass the road scraper in the place and in the manner in which he did attempt to pass the same, and in failing to sound his horn.

In our opinion evidence was introduced from which the jury were warranted in finding that the stage driver was negligent, and that such negligence rendered appellants liable to respondent for injuries suffered by him as a result of the collision. Respondent was a passenger for hire upon this stage, and consequently appellant company owed respondent the duty

of extending to him the highest degree of care, to protect him from injury, consistent with the practical operation of the stage. Testimony was introduced from which the jury may have found that the stage driver failed to sound his horn, as he proceeded to pass around the scraper and saw the oil truck approaching him at a high rate of speed, and that such failure to sound his horn constituted negligence and rendered appellants liable within the instructions of the court. The testimony was contradictory, but it was for the jury to determine the facts.

Upon the whole record we cannot say that the verdict of the jury in respondent's favor is not supported by competent evidence.

Appellants complain of the refusal of the trial court to grant them a new trial upon the ground of newly discovered evidence. We have carefully read the affidavits filed by appellants showing the newly discovered evidence upon which they rely, and we cannot say that the trial court erred in refusing to grant a new trial upon the grounds urged.

In the last place, appellants contend that the verdict rendered is excessive. With this contention we agree. The verdict was in the sum of eighteen hundred dollars, and in our opinion no recovery by respondent in excess of one thousand dollars finds support in the evidence. If plaintiff elects within thirty days to remit eight hundred dollars from the amount of the judgment, it will be allowed to stand for the remaining one thousand dollars, and in that amount will be affirmed. If plaintiff does not so elect, the judgment will be reversed and a new trial awarded. Appellants will recover their costs upon this appeal.

FULLERTON, C. J., TOLMAN, HOLCOMB, and MITCHELL, JJ., concur.